# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br>  v.<br><br>LAURA ELENA LOPEZ,<br><br>  Defendant. | CASE NO. 05cr2159 BTM<br><br>**ORDER GRANTING MOTION FOR NEW TRIAL** |

Defendant Laura Elena Lopez moves the Court to grant her a new trial. For the reasons discussed below, Defendant's motion is **GRANTED**.

## I. PROCEDURAL HISTORY

In an Indictment filed on November 30, 2005, Defendant was charged with one count of Conspiracy to Bring in Illegal Aliens for Financial Gain in violation of 8 U.S.C. § 1324(a)(2)(B)(ii) and 18 U.S.C. § 371, three counts of Bringing in Illegal Aliens for Financial Gain and Aiding and Abetting in violation of 8 US.C. § 1324(a)(2)(B)(ii) and 18 U.S.C. § 2, one count of Conspiracy to Transport Illegal Aliens in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii), (v)(I), and two counts of Transportation of Illegal Aliens and Aiding and Abetting in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii), (v)(II).

On January 9, 2006, Defendant filed a motion to suppress statements under Miranda and the due process clause. Defendant argued that statements she made to Agent Nelson

Atiles while she was in custody should be suppressed "because they were coerced (following visible physical harm to her co-defendant) and were not demonstrably knowingly, intelligently or voluntarily made." On January 17, 2006, Defendant filed a First Amended Memorandum of Points and Authorities which provided more detail regarding the abuse Defendant allegedly witnessed. According to Defendant's papers, before Agent Atiles advised her of her Miranda rights, Defendant witnessed a plain-clothed border patrol agent hit co-Defendant Mr. Tapia's head against the wall while Mr. Tapia was hancuffed. Defendant allegedly heard the plain-clothed agents and Agent Atiles say that they did not want to touch Mr. Tapia because they thought he was gay. She also allegedly heard agents tell other detainees that they didn't have any rights and heard agents tell someone he was a stupid idiot ("pendejo") for refusing to talk without an attorney present.

On January 30, 2006, Defendant filed a Supplemental Motion and Memorandum of Points and Authorities, which sought the suppression of her confession to Agents Olsen and Wright. Defendant argued that her confession should be suppressed because she was not brought before a magistrate judge within the six-hour safe-harbor period set forth in 18 U.S.C. § 3501. Defendant also argued that suppression was required under the totality of the circumstances. Defendant pointed out that she was not re-Mirandized, even though her second interrogation occurred about nine hours later. Defendant claimed that she was exhausted and hoped that speaking to Agent Olsen would allow her to go home.

On March 27, 2006 and April 4, 2006, Judge John S. Rhoades conducted an evidentiary hearing regarding Defendant's motions to suppress. Agents Scariano, Nila, Acosta, Atiles, Olsen, and Wright testified at the hearing. The agents were asked about, among other things, the circumstances surrounding Defendant's apprehension, the conditions of Defendant's confinement at the Border Patrol Station, the use of force or intimidation against any other detainee, communications between the agents and Defendant, and the events leading up to and including Defendant's confession. At no time did Defendant's attorney or the Government's attorney ask the agents why Defendant was not promptly brought before a magistrate judge on the morning of November 15, 2005. None

of the agents provided any explanation for the delay in bringing Defendant before a magistrate judge.

On April 4, 2006, Defendant filed a "Checklist for Assessing Inadmissibility of Statements Made in Response to Interrogation by Agents Olsen and Wright Which Occurred About Nine Hours After Agent Atiles' Interrogation." The checklist focused on factors to be considered in determining whether Miranda warnings have become so "stale" as to dilute their effectiveness.

On August 14, 2006, Judge Rhoades denied Defendant's "motion to suppress on Miranda grounds." Judge Rhoades concluded that Defendant was advised of her Miranda rights and affirmatively waived those rights. (Transcript of 8/14/06 hearing, 6.) Judge Rhoades found that Defendant knowingly, intelligently and voluntarily waived her rights, explaining that Defendant's claim to have witnessed abuse and intimidation of other detainees was not credible. (Id. at 6-7.) Relying on United States v. Rodriguez-Preciado, 399 F.3d 1118 (9th Cir. 2005), Judge Rhoades also held that there was no basis for requiring that Defendant be readvised of her rights before being questioned the second time. Judge Rhoades did not address the issue of the delay between Defendant's arrest and her arraignment and whether such delay had an impact on the voluntariness of Defendant's confession.

On August 18, 2006, after reviewing Henthorn materials regarding Agent Atila, Judge Rhoades issued an order reaffirming his denial of Defendant's motion to suppress. Judge Rhoades explained: "The court continues to conclude that defendant knowingly, intelligently and voluntarily made incriminating statements to the agent after being read her Miranda rights and that defendant did not waive her rights out of fear of being abused because defendant did not, as she claims, witness the abuse of other detainees."

This case was assigned to Judge Moskowitz for trial. At trial, evidence of Defendant's confession to Agent Olsen was admitted. The Jury found Defendant guilty on all Counts before them (Counts 2, 3, 4, 6, 7, and 8).

## II. PERTINENT FACTS

On Monday, November 14, 2005, at approximately 9:00 p.m., agents stopped the car Defendant was driving and arrested her. (Transcript of 3/27/06 hearing, 21-23.) She was taken into custody and transported to the Calexico Border Patrol Station, where she was placed in a holding cell. (Trial Transcript, 154.) The holding cell did not contain a bed, only a hard cement bench with no blanket or pillow. (Transcript of 4/4/06 hearing, 13.)

Shortly before 1:00 a.m., Agent Atiles walked Defendant from her cell to an interview room. (Trial Transcript, 154, 188.) Atiles advised Defendant of her Miranda rights in Spanish. (Id. at 155.) Defendant agreed to talk. (Id. at 309.) The interview was conducted by Atiles and Agent Acosta and was videotaped. (Id. at 154.) Defendant denied being involved in any attempt to smuggle aliens and explained that she was just picking Tapia up because he had called her and told her that he was stranded. (Id. at 159, 309.) Near the end of the videotaped interview, Atiles asked Defendant two separate times whether she had anything else to say regarding the matter. Defendant said, "No." (Exh. A to Def's Reply.)

Atiles did not believe that Defendant was telling the truth. (Transcript of 4/4/06 hearing, 29.) After the videotaped interview ended, Defendant kept pleading with Atiles to release her. (Trial Transcript, 160.) Atiles interpreted her pleas as an offer to make a deal – i.e., to tell the "truth" in exchange for release. (Transcript of 4/4/06 hearing, 30.) Atiles told Defendant that he was going to put her back in her cell and "give her some time to think about what she actually wanted to say to us." (Trial Transcript, 161; Transcript of 3/27/06 hearing, 76.)

Atiles' shift ended at 6:00 a.m. (Transcript of 4/4/06 hearing, 28.) Before he left, he instructed Agent Olsen, who was starting his shift, to interview Defendant again. (Transcript of 3/27/06 hearing, 76; Transcript of 4/4/06 hearing, 29.) Atiles told Olsen that Defendant might have some information or might be willing to talk. (Transcript of 4/4/06 hearing, 38.) At the evidentiary hearing, Atiles testified, "[T]he reason I spoke to Agent Olsen is because I believe Miss Lopez was at the point where she actually really wanted to tell us what actually occurred." (Transcript of 4/4/06 hearing, 29.)

The second interview began at 10:15 a.m.  (Transcript of 4/4/06 hearing, 38.) Defendant appeared sleepy and was given a few minutes to wake up.  (Trial Transcript, 231.) Neither Agent Olsen nor Agent Wright, who was also present, re-advised Defendant of her Miranda rights.  (Transcript of 4/4/06 hearing, 41; Trial Transcript, 269.)  Defendant said that she wanted to go home and expressed concern about who would take care of her children. (Trial Transcript, 256; Transcript of 4/4/06 hearing, 41.)  The agents told her that she did not have to talk to them and that she would be not be released at that time, regardless of what she said.  (Transcript of 4/4/06 hearing, 41, 64.)  However, Agent Wright told her that the information could result in her getting leniency later on.  (Trial Transcript, 269.)  Defendant proceeded to make incriminating statements about her involvement in the alien smuggling. Defendant stated that she worked for a man named Ricardo who was going to pay her $300 to drop off and pick up an individual who was going to drive a van to the location where the illegal aliens were going to board the vehicle.  (Trial Transcript, 241-43.)

The following day, Wednesday, November 16, 2005, Defendant was brought before Magistrate Judge Peter C. Lewis in El Centro, California for arraignment.

The driving distance between the Calexico Border Patrol Station and the courthouse in El Centro, where Magistrate Judge Lewis sits, is approximately fourteen miles.[1]

### III. DISCUSSION

Defendant moves for a new trial pursuant to Fed. R. Crim. P. 33(a) on the ground that her inculpatory statements to Agents Olsen and Wright should have been suppressed. Defendant reasserts her argument that she was not brought before the Magistrate Judge in a timely manner as required by Fed. R. Crim. P. 5(a)(1)(A), and that such delay rendered her confession involuntary.  The Court agrees with Defendant and **GRANTS** the motion for a new trial.

---

[1] According to http://www.mapquest.com/directions, the driving distance between the Border Patrol Station at 1150 E. Birch Street, Calexico, CA 92231 and the Courthouse at 2003 W. Adams Ave., El Centro, CA 92243, is 13.92 miles.

1   As a preliminary matter, the Court notes that Judge Rhoades never ruled on Defendant's motion to suppress her confession on the ground that there was unreasonable delay in bringing her before a magistrate judge.  This ground for suppression became lost in a sea of other arguments advanced by Defendant.  The issue of unnecessary delay in bringing Defendant before a magistrate judge became overshadowed by the issue of alleged abuse and intimidation of detainees.

Upon review of the transcript of Judge Rhoades' ruling on the motion to suppress, it is clear that Judge Rhoades did not consider the issue at hand.  Judge Rhoades was ruling on Defendant's argument that she did not voluntarily waive her Miranda rights because she was intimidated into doing so after witnessing the physical abuse and intimidation of Tapia and other detainees.  Judge Rhoades made no findings or conclusions of law on the issue of delay in bringing Defendant before a magistrate judge.

The case went to trial before Judge Moskowitz without proper resolution of the issue.  As a result, this is the first time that the Court has had the opportunity to review the merits of Defendant's position.

Rule 5(a)(1)(A) provides, "A person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge, or before a state or local judicial officer as Rule 5(c) provides, unless a statute provides otherwise."

18 U.S.C. § 3501(c) provides, in relevant part:

In any criminal prosecution by the United States or by the District of Columbia, a confession made or given by a person who is a defendant therein, while such person was under arrest or other detention in the custody of any law-enforcement officer or law-enforcement agency, shall not be inadmissible solely because of delay in bringing such person before a magistrate judge . . . if such confession is found by the trial judge to have been made voluntarily and if the weight to be given the confession is left to the jury and if such confession was made or given by such person within six hours immediately following his arrest or other detention: *Provided*, That the time limitation contained in this subsection shall not apply in any case in which the delay in bringing such person before such magistrate judge or other officer beyond such six-hour period is found by the trial judge to be reasonable considering the means of transportation and the distance to be traveled to the nearest available such magistrate judge or other officer.

Section 3501(c) creates a six-hour "safe harbor" period during which a confession will not be excludable solely because of delay.  United States v. Van Poyck, 77 F.3d 285, 288

(9th Cir. 1996). The "safe harbor" extends beyond the six-hour period if the delay is reasonable and is due to the means of transportation and the distance to be traveled to the nearest available magistrate judge. Id. In determining whether statements made outside the six-hour safe harbor should be admitted, courts look to the reasonableness of the delay and/or whether public policy favors admission. Id.

Here, there is no evidence that the delay in bringing Defendant before the Magistrate Judge was reasonable. The interview by Agents Olsen and Wright took place at 10:15 a.m. on Tuesday, after Defendant had spent the night in a holding cell. Instead of interviewing her, the agents could and should have taken Defendant to the El Centro courthouse that was only fourteen miles away. There is no evidence that there were transportation problems or other circumstances excusing the delay in presenting Defendant before Magistrate Judge Lewis. The Court gave the Government the opportunity to supplement the record with the reason for delay, but none has been offered.

Indeed, the evidence shows that the reason why Defendant was not promptly brought before the Magistrate Judge on Tuesday morning was so that she could be questioned again. After telling Defendant to think about what she "actually" want to say, and leaving Defendant in a holding cell all night, Agent Atiles believed that Defendant was ready to talk. Before leaving at the end of his shift, he instructed Agent Olsen to interview Defendant again because she might have some information or might be willing to talk. Atiles did not direct Olsen to bring Defendant before the Magistrate Judge.

What happened in this case is a classic example of what Rule 5(a) and section 3501 were designed to prevent. As explained by the Ninth Circuit:

> The purposes embedded in § 3501 - to prevent confessions extracted due to prolonged pre-arraignment detention and interrogation, and to supervise the processing of defendants from as early a point in the criminal process as is practicable - are frustrated when the arraignment of a defendant who has been in custody for more than six hours is further delayed for no purpose other than to allow further interrogation of the defendant. If we countenance the police procedure followed here, we give officers a free hand to postpone any arraignment until a confession is obtained. That was not the legislative intent behind § 3501.

United States v. Wilson, 838 F.2d 1081, 1087 (9th Cir. 1988). As our Supreme Court has

said, the requirement of prompt arraignment "constitutes an important safeguard - not only in assuring protection for the innocent but also in securing conviction of the guilty by methods that commend themselves to a progressive and self-confident society. . . . It aims to avoid all the evil implications of secret interrogation of persons accused of crime." McNabb v. United States, 318 U.S. 332, 343-44 (1943). Given the facts of this case, it would be contrary to public policy to allow the admission of Defendant's confession.

The facts of this case are distinguishable from United States v. Gamez, 301 F.3d 1138 (9th Cir. 2002), upon which the Government relies. In Gamez, Gamez did not speak English and could not have been interrogated until 10:30 a.m. on the first day of his detention, when the first available Spanish-speaking FBI agent arrived at the Border Patrol Station. The District Court in Tucson required advance notification by 10:30 a.m. of each defendant who would be brought to that day's 2:00 p.m. initial appearance. Therefore, it was not possible to bring Gamez before the magistrate judge on his first day of detention. The earliest Gamez could be arraigned was at 2:00 p.m. the next day. In this case, there is no evidence suggesting that Defendant was brought before the Magistrate Judge at the first possible time.

Furthermore, the Court finds that Defendant's confession was involuntary. Section 3501(b) lists five factors that must be considered by a trial judge in determining the issue of voluntariness.[2] The time elapsing between arrest and arraignment is the first factor listed

---

[2] Section 3501(b) provides:

The trial judge in determining the issue of voluntariness shall take into consideration all the circumstances surrounding the giving of the confession, including (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel; and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession.

The presence or absence of any of the above-mentioned factors to be taken into consideration by the judge need not be conclusive on the issue of

1  and "is the most important factor of all." Wilson, 838 F.2d at 1086.  Upon the conclusion of
2  Agent Atiles' videotaped interview of Defendant, Defendant pleaded with Atiles to release
3  her. However, Atiles let Defendant know that he did not believe her story.  Notwithstanding
4  the fact that Defendant twice stated that she had nothing else to say about the matter, Agent
5  Atiles told her that he was going to "give her some time" to think about what she "actually"
6  wanted to tell them.   Defendant was essentially "put on ice" for the rest of the night in a
7  holding cell without a bed, pillow, or blanket.  By morning, Defendant was anxious to go
8  home and was concerned about her children. Knowing that the account she gave Atiles was
9  not believed and resulted in many hours of confinement in the holding cell, Defendant ended
10 up making incriminating statements in the hopes that she would obtain some sort of leniency.
11 From Defendant's point of view, she had to tell the agents what they wanted to hear or she
12 would be detained in the holding cell for an indefinite period of time.
13      Considering the totality of the circumstances, the Court concludes that Defendant's
14 confession was not voluntarily.  Therefore, evidence of her confession should not have been
15 admitted at trial.
16      The erroneous admission of Defendant's confession cannot be considered harmless.
17 The confession went "to the heart of the case" and was probably the most damaging
18 evidence against Defendant. See United States v. Williams, 435 F.3d 1148, 1163 (9th Cir.
19 2006). The Court certainly cannot conclude beyond a reasonable doubt that the erroneously
20 admitted confession did not contribute to the guilty verdict against Defendant. See Chapman
21 v. California, 386 U.S. 18, 24 (1967). Accordingly, the interest of justice requires that the
22 Court grant Defendant a new trial.

### IV. CONCLUSION

25 Defendant's Motion for New Trial is **GRANTED**. The Court suppresses all evidence
26 of Defendant's incriminating statements to Agents Olsen and Wright because such
27 statements were the result of unreasonable pre-arraignment delay and were involuntary.
28 ――――――――――――――
     voluntariness of the confession.

The parties shall appear before the Court on Friday, May 11, 2007 at 11:30 a.m. to set the dates for the new trial.

DATED: May 7, 2007

_____
Hon. Barry Ted Moskowitz
United States District Judge